Thank you, Judge Callahan. In this case, the district court expressly recognized Ninth Circuit precedent stating that Davis Corpus jurisdiction exists for federal prisoners' claims that he's been subjected to greater restrictions of his liberty without due process of law. Yet the district court dismissed the petition without engaging with the substance of Mr. Fiorito's allegations, specifically that he's moved to a higher security, more restrictive prison without due process. Because those allegations fit the jurisdictional rule, the district court's decision should be reversed. Maybe you can tell me, it's a little bit confusing, what specific remedies does Mr. Fiorito seek in this action? Does he want the court to order his transfer to another prison or just expunge his disciplinary finding from his prison record? Judge Callahan, your Honor, he's specifically asking for the expungement of the disciplinary of the incident report that led to disciplinary proceeding and caused an increase in his custody score, which consequently... Judge Callahan, is there evidence in the record that indicates that if he is seeking expungement, that this would result in a quantum change of custody for him? Judge Callahan, I think I did not hear the beginning of your Honor's question. But yes, the distinction is that by expunging the disciplinary, the incident report, excuse me, the BOP would have to reconsider his custody score without regard to the false incident report, which very well may result in his transfer back to a lower security prison and, in your Honor's words, result in a quantum change in his custody. We prefer the formulation. But is the transfer to prison enough? I mean, you rely on the Bostic case, but Bostic says that habeas extends to expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility for parole. Do you meet that standard? No, your Honor. That's not the standard that we are advocating on appeal. The standard is the other standard enunciated in the court. There were three different standards that the Bostic court enunciated. There was the standard your Honor just mentioned. In addition, there was the standard that I just discussed, which is the quantum change. We prefer that as it is enunciated in the Bostic case, which is a great risk to his custody. I understand that this is... But if he's really seeking a direct transfer to another prison, is it a proper remedy that we can issue in light of 18 U.S.C. section 3621B? Well, your Honor, first of all, the court would not be actually ordering, the district court would not be ordering the effective transfer immediately. It would be ordering the expungement of the false incident report and requiring BOP to consider that factor in light of his custody score and then therefore whether or not he needs to be transferred. It would ultimately be BOP's discretion after that to transfer him to a lower security prison or not. But can you also argue... But he has... Oh, go ahead, judge. Well, he's not being threatened with solitary or anything like that. And our cases seem to hold that the mere transfer from one prison to another does not qualify as a deprivation of liberty within the meaning of the habeas corpus rules. Your Honor, a couple of responses there. One, I would note that Mr. Furido did allege that he was placed in solitary confinement frequently. And for example, I would direct the court to page 51 of the record where he said that this is the addendum to his petition. He said he filed that addendum after returning from the hole for four months. These are his words. But he's not in solitary right now, so that's irrelevant as far as a current habeas case is concerned, is it not? Your Honor, his allegations are that he was transferred to a more restrictive type of prison. And it is true, as Your Honor says, that he's been transferred from his prior prison where he filed his habeas petition to his current medium security prison. But as he alleged in the petition, it is the type of prison that is much more restrictive than his prior prison back in NCI. Some prisons are more, like I know in California we have a prison that if you're really misbehave all the time or you're really dangerous, you're in your cell 23 out of 24 hours a day and only get to go out for one hour by yourself. But he's not in that type of prison. You could argue in that type of prison, maybe you are in the hole all the time because you're in 23 out of 24, you know, you're always, but he's not in that type of prison. It's just not, he's not in the federal country club for sure. Your Honor, to reorient the court, we are taking the allegations as true at the stage of the proceedings. And he did specifically allege that in the medium security prison setting, he was subjected to 24 hour lockdown regularly. So that would directly answer Your Honor's question whether or not he is, in other words, kept within his cell at all times. Well, 24 hour lockdown, that's different than being in the hole. I mean, it could, is the whole prison on lockdown or what? It's not. The whole thing is really, it seems like all of you know a lot more about this case than we know, and no one wants to tell us. Well, Your Honor, at this point in time, we have only the allegations to go off of. The district court dismissed it under the rules governing 2254 and 2255 cases very quickly. Notwithstanding the fact that there were objections to the purported recommendation that went to the judge. There has been no fact development in that regard. And the court felt that fact. I'm sorry, Judge Collins. What's the effect? Do you think there's any effect on this case of the Supreme Court's decision in, I'm not quite sure I'm pronouncing it right, thuracidium, which said that habeas corpus is really focused on the remedy of release. Does that cast doubt on some of the broader statements of Bostic that seem that something can survive metals? Your Honor, and I apologize. I just want to know. I don't think I said it earlier. I wish to reserve three minutes of my time. So that said, so in answer to your, to Judge Collins, your question, I'm not familiar with that case specifically, but I would direct the court to statements by the court in the Skinner v. Switzer decision, and which relied on Justice Scalia's concurrence and the Wilkins v. Dotson decision. And throughout that line, and this is echoed again in the Nettles decision by this court on bond, that one of the types of relief obtainable through habeas corpus under the 2241 section is, as Justice Scalia put it, a reduction in the level of custody. Well, but thuracidium was also too. There was a companion Ninth Circuit case. They followed, I think it was the Third Circuit, and said the Ninth Circuit was wrong in an expansion of habeas on certain issues. I think what Judge Collins is saying. So it does contain within it a cavity of habeas to certain things, and the Ninth Circuit was essentially reversed for expanding habeas into areas where the Supreme Court said it doesn't go. So it is something that I think arguably does touch on the rationale here. Your Honors, I don't understand. I don't, I'm not familiar with that case in specific. I'd be happy to provide further briefing if Your Honors requested it, but I would just note that I'm not aware of the Supreme Court overruling his prior statements in the Skinner case or Justice Scalia's statements in the concurrence and Wilkins v. Dotson case. As I understand it, the current law in the Ninth Circuit permits the continuing application of the rule in Bostick, which we would hold that we would say that the district court simply did not meaningfully apply by considering the actual allegations in the petition. You're arguing that you come within Bostick, is that correct? That is correct, Your Honor. All right. You also argued that the district court's decision not to convert and transfer Fioretto's petition severely prejudices him because the statute of limitations under Bivens' action has run. But isn't it true that the statute of limitations had not run when the district court dismissed the petition, though he technically could have filed a Bivens' action at that time? That's true, Your Honor, but of course he appealed it, and so if it went back down, it would remain the same filing date as the date that he filed his initial petition. We don't think that it would be correct to effectively penalize Mr. Fioretto for pursuing his appellate remedies in that case. And as Your Honor noted, that we would say that in the event that this court nonetheless holds that Habeas jurisdiction cannot be found and that further factual development cannot help assist the court in deciding that this court reverse and require that the district court consider the conversion factor. If there are no further questions, I'm sorry, Judge. Let me ask you, either of you have any other questions here, because I'll give him two minutes, so if you want to ask more questions now, you can. It doesn't appear so, so I'll give you two minutes on rebuttal. Thank you. Thank you, Your Honor. All right, we'll proceed to the government. Good morning. Good morning. I apologize, I was on mute. May it please the court. My name is Hillary Burrell, Assistant United States Attorney, appearing on behalf of the Warden of FCI Victorville II. Now, although Mr. Fioretto has filed numerous Habeas petitions, the Habeas petition that is in this court involves his challenge to an incident report and a disciplinary hearing that occurred at FCI Ashland in Kentucky. The lower court's dismissal of those specific claims was proper and should be affirmed for two reasons. First, because as this court has pointed out in the question of petitioner's counsel, his claims are not cognizable in Habeas. And second, because Mr. Fioretto chose to pursue a Habeas theory and in his operative complaint explicitly decided to not file a Bivens case. Well, so let me ask you about that, because this applies, you know, when you think of the Great Writ and, you know, all of that. You argue that Fioretto's claim is not cognizable, but you also seem to argue, and I think I heard this, that it is not possible by which Fioretto can raise this claim? Well, Your Honor, as this court has recognized in Nettles and Rizzo, in fact, Rizzo v. Dawson, that a petitioner's challenge under Habeas is only proper if they are challenging the legality or the duration of their confinement. And particularly in situations like this, a challenge to a disciplinary proceeding is only proper if the petitioner has lost good time credits. I understand your Habeas argument better, but if you're arguing there, you know, when there's a wrong and there's no place someone can bring up, you seem to be arguing that what, if there, if in fact, I mean, his theory is that they trumped up this disciplinary stuff, then to trump up its numbers, and then it resulted in a transfer and then he's subject to, you know, it's a house of cards, that all of that. And I'm hearing your argument to say, he's in the wrong place right now, but there is no right place for him. And that, that makes your argument a little less persuasive. If there's no, there would never be regret. Well, Your Honor, prisoners who are challenging disciplinary proceedings or specific types of discipline do have significant remedies within the Bureau of Prisons process. They can file an administrative remedy challenging the disciplinary proceeding. They can then appeal the finding on that. And if they're not pleased with the appellate process within the Bureau, they can then ask for further investigation by the Office of the Inspector General. Here, the specific claims that Mr. Fiorito is alleging regarding his disciplinary proceeding and the incident report are properly challenged in the administrative process. However, as this court has... If his pleadings, if we have to take them as true at this stage, are you saying it could never be a 1983 or a Bivens claim? Well, Your Honor, 1983 would not be applicable here because none of the individuals were acting under the color of state law. However, as stated in our pleading, we do not believe that this would be a proper expansion of Bivens remedies. And in fact, Mr. Fiorito made it clear in his operative complaint that he knew what a Bivens case was and that he explicitly decided to not file one. Counsel, would you respond to opposing counsel on the Bostic case? Yes, Your Honor. Importantly, in Bostic, the individual actually did lose good time credits. And here, Mr. Fiorito has admitted that he did not lose good time credits. As this court noted in Bostic, the court properly identified that habeas would be proper if it affected the duration of the individual's confinement. And here, that is simply not the case. Moreover, as Petitioner's Counsel mentioned, there may be habeas jurisdiction where a case involves a quantum change in status. Now, as the court in Graham versus Brolin defined a quantum change, that is the difference between essentially freedom or being on parole and solitary confinement. Here, Mr. Fiorito was only transferred from a low security prison to a medium security prison. That is simply not a quantum change in his status. Moreover, your counsel did mention that on occasion, apparently he was put in solitary. Do you agree with that or not? Your Honor, I would like to address that point. And in fact, while we don't necessarily have any record verifying that that was true, even if that was true, even if this court takes it as true that Mr. Fiorito was put in solitary confinement at Victorville, he in fact chose to file a separate habeas action regarding his treatment at Victorville, including his time in solitary confinement. Your Honor, this habeas petition is solely and the conditions of confinement at issue here. So, Your Honor, there's actually three different habeas petitions that Mr. Fiorito filed in district court against Warden Ensel. The first is this. The second was a habeas petition that was filed against Ms. Ensel regarding his disciplinary treatment, including his time in solitary confinement at Victorville. And the third is that case here. Is that case on appeal? Your Honor, that case was dismissed. And Mr. Fiorito chose to not appeal it. However, there is a third case. And that third case was Mr. Fiorito challenging his classification as a medium custody score prisoner. That case was, in fact, briefed on the merits at the district court level and is now currently before this court in a trailing matter. And that matter is 1955-491. And it was noted by both parties in the briefs as a related case. What's the status of that case right now? Has it been assigned to another panel? Your Honor, I believe it has not yet been assigned a panel. It's still in the briefing stage. So is it your view that the amendments to 3621 in the first step after jurisdiction stripping provision? Well, Your Honor, as a petitioner's counsel noted, the first step act was passed after Mr. Fiorito's claims. However, we believe that the first step act was simply codification of the court's prior holdings in multiple cases, including United States v. Dragna and United States v. Ceballos, in which this court specifically declined to exercise any control or influence over what went on. So to answer my question, yes or no, is it a jurisdiction stripping provision that changes the law, or is it one that basically doesn't make any difference to law here in which you can set aside? Well, in cases where a petitioner such as this one is simply challenging his custody score or security classification, then we would agree that it is jurisdiction stripping. But you would concede that certain claims are preserved? What's the scope of those, constitutional claims? Well, Your Honor, there may be situations where certain constitutional claims fall outside the scope of the first step act. However, that is not the case here, as Mr. Fiorito is simply challenging his disciplinary proceeding at Kentucky and his change from a low-security prisoner to a medium-security prisoner, which, as mentioned, is actually being challenged in a subsequent appeal. That case is not before this panel? Yes, Your Honor, that's correct. However, that case was briefed on the merits, and substantial information was provided to show that Mr. Fiorito was properly classified, not based on any incident reports, but rather based on a prior criminal history. I just want to understand the government's position. If habeas isn't available because habeas is limited to legality or duration of confinement, and he doesn't want monetary damages, then what's the cause of action that would allow him to get a remedy for unconstitutional conduct relating to his conditions of confinement? Well, Your Honor, while we don't want to opine as to what the Sixth Circuit would do, should it be where Mr. Fiorito was stationed at the time, however... Well, Your Honor, it's possible. However, we believe that there would not be a proper claim for equitable relief because Mr. Fiorito was not denied any due time credits and was properly classified as a medium-security prisoner. But those kind of go to the merits. I mean, suppose that, you know, Mr. Stewart, here, the allegation, you know, suppose it's that, you know, it's purely retaliatory. You file something against me, and I'm going to, you know, have you transferred or put in solitary. I mean, it's just blatant, you know, retaliatory action, but it doesn't affect the legality or the duration of confinement. Is there no equitable cause of action to address that at all in the government's view? Well, Your Honor, as noted, Mr. Fiorito is able to challenge any sort of transfer or disciplinary actions as retaliatory within the administrative process in the Bureau of Prisons. And, Your Honor, he has multiple steps of appeals within that administrative process. And suppose that he gets the bums rush in that process, and he comes, is there any remedy in court? Well, Your Honor, although we don't believe a Bivens remedy would be proper, in this case, based on the facts that Mr. Fiorito has alleged, if another prisoner, such as Mr. Fiorito, was able to provide sufficient information regarding a sort of retaliation or a quantum change. It's like a prison conspiracy. This is how they're being framed, you know. Can you say that one more time? Well, say it's more like a prison-wide conspiracy, or, you know, that there's some, there's just, you know, bad people in the prison, and they're doing this to inmates, and they're running it in a way that is violating people's rights, you know. Are you saying that could never be reached? You know, because if something like that were the case, and you're letting the inmates run the asylum, or the guards run the, you know, and act on their own behavior, so it doesn't, it's not really a satisfactory thought that there would be nothing if something like that existed. Well, Your Honor, in cases like that, where there has been widespread inappropriate actions by guards or by the Bureau, inmates have been able to file class actions which allege direct constitutional violations. However, this is not a case where that would be appropriate. Any additional questions? All right, we're taking you over. So, Mr. Becker, you have two minutes. Thank you, Judge Calhoun. I just want to respond to a couple points by my colleague in the that Mr. Fiorito did not say that he went through all of his administrative options. He actually did so. That is, at page 65 of the record, he stated so explicitly that he exhausted all of his administrative options. So, as Your Honors were already discussing, at this point in the proceedings, it's really whether or not Mr. Fiorito can pursue his constitutional claims in the district court. As explained for the reasons throughout the reply brief, the government's reasons for the mootness claim that the government brings is not effectual here because Mr. Fiorito is suffering the same kind of harm due to being classified as a medium security prisoner. And with regards to section 3621, the government's argument... Can't the First Step Act, in your view, ever be jurisdiction stripping? I know you're arguing that it's not here, but it does seem to have some language to that effect. Your Honor, it certainly could, but it would require a greater degree of direction from Congress. And in particular, I would direct the Court to our arguments on the retroactivity point. Congress has not indicated in any way that this act would have a retroactive jurisdiction stripping effect, especially when it provided retroactivity and expressed terms to other sections of the First Step Act, modifying other statutes in the U.S. Code. But we would say that Congress is certainly empowered, and of course, I don't power to strip jurisdiction. It certainly has not done so in an effective way with regards to Mr. Fiorito's petition. Counsel, this case is brought against the warden of Victorville, which is in California, but the complaint seems to be directed to our activities at Ashland. And you heard counsel's argument about Ashland. What's your response? Well, Your Honor, it's a habeas petition that he filed while I was at Victorville. Under the normal standards, he would be filing it against the warden at that facility where he's housed. This is, of course, subsequent to the transfer that is affected through the unconstitutional behavior alleged at FCI Ashland. This was who we had to pretty much file this petition against. But you're not alleging any inappropriate action by the warden of Victorville, are you? It's all what the warden at Ashland did. Yes, Your Honor. It's all about the, well, it's about the behavior of certain individuals at FCI Ashland. That is correct, Your Honor. Okay, thank you. And it claims that as a result of the transfer, it was placed into a higher security, more restrictive prison, owing to the type of prison where he was transferred and where he is still today. I believe I am out of time. Unless the panelists have further questions, I respectfully ask the court that it reverse the district court's decision and direct it to proceed to the mayor holding jurisdiction proper. Thank you. Thank you. Let me, do either of my colleagues have any additional questions? No. Okay, thank you both for your very helpful argument in this matter. And again, thank you both for your service and for Thank you, Your Honor. Thank you, Your Honor.
judges: O'scannlain, Callahan, Collins